**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  05-cv-00375-REB-BNB

QWEST CORPORATION,

    Plaintiff,

v.

AT&T CORP.,
AT&T COMMUNICATIONS, INC.,
AT&T COMMUNICATIONS OF THE PACIFIC NORTHWEST, INC.,
AT&T COMMUNICATIONS OF THE MIDWEST, INC.,
AT&T COMMUNICATIONS OF THE MOUNTAIN STATES, INC., and
AT&T COMMUNICATIONS OF THE SOUTHWEST, INC.,

    Defendants.
_____

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIFTH CLAIM FOR RELIEF**
_____

**Blackburn, J.**

The matter before me is Defendants' Motion to Dismiss Plaintiff's Fifth Claim for Relief [#15], filed May 2, 2005.  By this motion, defendants (referred to collectively herein as "AT&T") contend that Qwest Corporation's claim for unjust enrichment is preempted by federal law and also fails to state a claim for relief.  I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).  I deny the motion.

Qwest's unjust enrichment claim is predicated on the allegation that AT&T wrongfully failed to make required contributions to the Universal Service Fund ("USF" or "the Fund").  The Fund is designed to help ensure access to telecommunications resources for low-income consumers, schools, libraries, and rural health care providers.  See 47 U.S.C. § 254; see also ***In re Universal Service Fund Telephone***

***Billing Practices Litigation***, 247 F.Supp.2d 1215, 1219(D. Kan. 2002).  It is funded by quarterly contributions from telecommunications providers such as Qwest and AT&T. Pursuant to Federal Communications Commission ("FCC") regulations, the amount of a carrier's contribution is "based on contributors' projected collected end-user revenues, and on a contribution factor determined quarterly by the Commission."  47 C.F.R. § 54.709(a).

On May 15, 2003, AT&T filed a petition with the FCC requesting a declaratory ruling as to whether, *inter alia*, its "enhanced" pre-paid calling cards were "telecommunications services" subject to USF contributions.  Concluding that they were, the FCC issued an order directing AT&T to pay past due contributions associated with such services.  Five days after that opinion was issued, Qwest filed this suit, seeking to recoup, *inter alia*, the excess USF contributions it paid as a result of AT&T's failure to meet its own obligations to the Fund.  Qwest's fifth claim for relief alleges that AT&T was unjustly enriched as a result of its failure to make the required contributions. AT&T responds that this claim should be dismissed because it is preempted by federal law and because it fails to state a claim under state law in any event.

In ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I must determine whether the allegations set forth in the complaint, if true, are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a).  "[T]he complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." ***Conley v. Gibson,*** 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); see also ***Daigle***

***v. Shell Oil Co.***, 972 F.2d 1527, 1533 (10th Cir.1992).  The complaint must be construed in the light most favorable to Qwest, and its allegations must be taken as true.  ***Robinson v. City and County of Denver***  39 F. Supp. 2d 1257, 1262-1263 (D. Colo. 1999) (citing ***Daigle***, 972 F.2d at 1533).  However, I need not assume that Qwest "can prove facts which [it] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." ***Associated General Contractors of California, Inc. v. California State Council of Carpenters***, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

     AT&T claims that Qwest's unjust enrichment claim is preempted because it would conflict both with the statutory directive that contributions to the USF be "equitable and nondiscriminatory" and with FCC regulations governing the Fund.  In determining whether a state law claim is preempted, the "ultimate touchstone" is congressional intent.  ***Medtronic, Inc. v. Lohr***, 518 U.S. 470, 485, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996).  Conflict preemption, such as AT&T urges here, a form of implied preemption, is found either when "'it is impossible for a private party to comply with both state and federal requirements' or 'state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" ***Cook v. Rockwell International Corp.***, 273 F.Supp.2d 1175, 1180 (D. Colo. 2003) (quoting ***English v. General Electric Co.***, 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990)).  Although AT&T does not specify which of these branches of conflict preemption is implicated here, its arguments appear to implicate only the latter.

AT&T argues first that Qwest's claim is preempted because it would require me to conclude that the FCC's prior determinations of Qwest's USF contributions was erroneous. No such conclusion is necessarily implicated by Qwest's claim. Although Qwest seeks a determination that it wrongfully paid more in USF contributions because of AT&T's failure to meet its own obligations to the Fund, the relief requested in this case would not entail a directive to the FCC to recalculate the contribution factor or to alter the considerations governing the calculation of contributions. Rather, Qwest seeks an order directing AT&T to pay it directly for the excess contributions it made to the Fund occasioned by AT&T's dereliction of duty. In no way will this determination cast doubt on the FCC's prior contribution determinations. Indeed, based on the information available to the FCC at the time, its calculation of Qwest's and AT&T's respective obligations was presumably accurate. Moreover, far from frustrating the statutory purpose of ensuring "equitable and nondiscriminatory" contributions from all carriers, Qwest's request for relief would actually advance those objectives.

AT&T argues further that Qwest's claim will conflict with FCC regulations, which already anticipate circumstances in which contributions to the Fund are either inadequate or excessive in any given quarter. *See* 47 C.F.R. § 54.709(3)(b) & (c). However, these regulations contemplate situations in which the overall level of contributions is either less or more than the amount necessary to fund the services provided by the USF. They say nothing of the situation presented here, in which other carriers have been forced to bear the burden of another's underpayment. The relief requested would in no way interfere with the mechanism the FCC has adopted for

4

addressing overpayments into the Fund.  Therefore, I find that Qwest's unjust enrichment claim is not preempted.

AT&T argues next that Qwest has failed to adequately plead a claim of unjust enrichment.  To recover under this theory, Qwest must prove that at its expense, AT&T received a benefit under circumstances that would make it unjust for AT&T to retain the benefit without paying.  **See Salzman v. Bachrach**, 996 P.2d 1263, 1265-66 (Colo. 2000).  AT&T first posits that any benefit to it was not at Qwest's expense because Qwest passed its USF costs on to its customers, as allowed by regulation.  **See** 47 C.F.R. § 54.712.  However, it is not clear at this juncture how much of its USF contributions Qwest actually recoups from customers, nor more specifically what portion of the excessive contributions at issue in this case were passed on.  Thus, it cannot be said that Qwest can prove no set of facts with respect to this element that would entitle it to relief.

AT&T argues also that Qwest cannot prove the second element of its cause of action because AT&T has not retained the alleged benefit, having been ordered by the FCC to refund the withheld contributions.  Setting aside the fact that AT&T has appealed and, therefore, not yet actually complied with the repayment order, this argument ignores, *inter alis*, the time value of money.  In addition, according to Qwest, AT&T also gained market share by being able to charge lower rates as a result of forgoing the expense of contributing to the Fund.  The claim, therefore, survives dismissal under Rule 12(b)(6) on this ground as well.

Finally, AT&T argues that the circumstances do not warrant the conclusion that it would be inequitable for it to retain the benefit. AT&T's argument hinges on the notion that its repayments to the USF will actually benefit Qwest (and other carriers) in subsequent quarters by reducing their respective contributions to the Fund. This proposition is not entirely manifest as a matter of fact. It is not clear that, if and when AT&T makes repayment to the Fund, its contributions will necessarily trigger the excess contribution provisions of the regulations. *See* 47 C.F.R. § 54.709(b).[1] Moreover, this argument evidences a severely truncated view of history, ignoring the very inequity that led to AT&T's being ordered to make repayments to the Fund in the first instance.

**THEREFORE, IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiff's Fifth Cause of Action [#15], filed May 2, 2005, is **DENIED**.

Dated September 12, 2005, at Denver, Colorado.

BY THE COURT:

s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge

---

[1] This provision comes into play only if quarterly contributions exceed the amount required to fund and administer the program. At this juncture, it is impossible to say whether any repayments made by AT&T will cause this provision to become operative in any future quarter.

6