IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-00375-REB-BNB

QWEST CORPORATION,

Plaintiff,

v.

AT&T CORP.
AT&T COMMUNICATIONS, INC.,
AT&T COMMUNICATIONS OF THE PACIFIC NORTHWEST, INC.,
AT&T COMMUNICATIONS OF THE MIDWEST, INC.,
AT&T COMMUNICATIONS OF THE MOUNTAIN STATES, INC., and
AT&T COMMUNICATIONS OF THE SOUTHWEST, INC.,

Defendants.
_____

**ORDER**
_____

This matter is before me on the plaintiff's **Unopposed Motion Seeking Immediate Order Allowing AT&T Discovery Materials Designated as Confidential To Be Submitted To the Federal Communications Commission** [Doc. #53, filed 5/23/06] (the "Motion"). I held a hearing on the Motion on May 31, 2006, and took the matter under advisement. The Motion is GRANTED.

The dispute here is whether certain documents produced by AT&T pursuant to a blanket protective order and marked as confidential and certain deposition testimony also marked as confidential are entitled to continuing protection under that protective order. The following materials are at issue:

(1) Documents numbered ATTQ440018441-46; ATTQ440017653-65; ATTQ510000117-19; ATTQ810006232; ATTQ810006288;

(2) Deposition testimony of Robert Carvelli taken May 5, 2006, at pp. 24-37, 42-44, 66-68;

(3) Deposition testimony of Ardell Burgess taken November 30, 2005, at pp.16-19, 21-22;

(4) Deposition testimony of Ardell Burgess taken May 4, 2006, at pp.13-18, 69-75, 77, 79, 82-83, 90-93, 95-98, 108-114, 117, 121-122, 130-133, 146-148, 154-157; and

(5) Deposition testimony of Cathleen Wild taken September 21, 2004, at pp. 37-38, 48-49, 59-60.

The Stipulated Protective Order in place in this case provides in relevant part:

> Any party may designate any document, material, or information produced by it to any other party as "Confidential Material." There shall be two designations of "Confidential Material": (a) Confidential; and (b) Highly Confidential. Confidential Material shall include documents, information, and material that constitutes or reveals a trade secret or other confidential research, development or commercial information that is subject to protection under Fed. R. Civ. P. 26(c). Producing Parties shall not designate as "Confidential" any material that constitutes information that is publicly available at the time of disclosure. "Highly Confidential" material shall include only particularly sensitive material that constitutes or reveals trade secrets (including, but not limited to, technical information regarding a party's telecommunications and data networks and information regarding products or services), financial information or plans, or business plans.
> 
> \* \* \*
> 
> A party may object to the designation of particular Confidential Material as Confidential or Highly Confidential by giving written notice to the party designating the disputed information. The written notice shall identify the information to which the objection is made (and, in the case of information designated as Highly

> Confidential, the notice shall specify whether the party objects to the material being treated as Confidential). Within ten business days, the parties shall negotiate in good faith to resolve the objections specified in the notice. If the parties cannot resolve the objection within such ten-day period, the party designating the information as Confidential or Highly Confidential may, within five business days thereafter, file an appropriate motion requesting that the Court determine whether the disputed information should be so designated under the terms of this Stipulated Protective Order, and until the Court rules on such motion, the disputed information shall retain its designation under the terms of this Stipulated Protective Order. If the designating party fails to file such a motion within the prescribed time, the disputed information shall lose the objected-to designation under this Stipulated Protective Order. In connection with a motion filed under this provision, the party designating the information as Confidential or Highly Confidential shall bear the burden of establishing that good cause exists for the disputed information to be so treated.

Stipulated Protective Order [Doc. # 47, filed 2/6/06] at ¶¶2,17.

The issue of the propriety of AT&T's designation of the disputed materials as confidential did not arise as envisioned in the Stipulated Protective Order, however, because Qwest asserted the issue was an emergency, arguing:

> Last Thursday, May 18, 2006, Qwest learned that the FCC may as soon as this week issue a rule that would purport to insulate AT&T from liability for the payment of the access charges that are at issue in this case, which discovery has shown are in the tens of millions of dollars. AT&T has argued to the FCC that the agency has the authority to "forgive" it from making payments otherwise required by statute and lawful tariffs, based on "equitable" considerations. The equitable considerations to which AT&T refers are AT&T's alleged confusion as to whether the services that it utilized to originate and terminate long distance calls are subject to ILEC access tariffs, and whether they were subject to interstate or intrastate access charges.
>
> Setting aside the fact that neither the FCC nor a court has the authority to waive or exempt a user of tariffed telecommunications services from its obligation to pay filed rates, based on equitable

> considerations or otherwise, AT&T has presented misleading
> information to the FCC.  AT&T's position to the FCC is
> contradicted by sworn testimony and documents produced in this
> and a related case . . ., which addresses a different scheme whereby
> AT&T sought to avoid access charges. . . .

Motion, ¶¶6-7 (internal note omitted).  Consequently, in view of the perceived emergency, Qwest initiated the issue by filing the Motion prior to engaging in the ten day period for negotiation contemplated by the Stipulated Protective Order.  Nonetheless, the parties have had more than three weeks, since at least May 23, 2006, when the Motion was filed, within which to resolve their dispute.  In addition, following the hearing on the Motion on May 31, 2006, I urged the parties to make further efforts to resolve the issue.  No resolution has been reported.  In view of the abundance of time available to the parties to attempt to resolve the matter prior to my ruling, I am not concerned about the unusual procedural posture of Motion.

AT&T has offered no evidence demonstrating that the disputed materials are trade secrets entitled to protection pursuant to Fed. R. Civ. P. 26(c)(7) or otherwise.  I am provided only with the arguments of counsel, and those arguments do not address any of the disputed information specifically.  At most, the arguments are sweeping and conclusory.[1]

Nonetheless, I have reviewed all of the disputed materials, and I am unable to identify any materials constituting trade secrets worthy of protection.

The test applicable to the protection of trade secrets is set out in <u>Centurion v. Warren</u>

---

[1] Specifically, AT&T's argument that the materials qualify as confidential information really is limited to two sentences, as follows: "These documents contain, for example, proprietary information about (1) AT&T's revenues and expenses, drawn from AT&T's internal financial records; (2) AT&T's internal call processing architectures; and (3) AT&T's commercial (and confidential) agreements with other entities.  This is precisely the type of material that is meant to be protected from public disclosure."  *AT&T's Response to Qwest's Emergency Motion [etc.]* [Doc. # 60, filed 5/30/06] at pp.13-14.

Steurer and Associates, 665 F.2d 323, 325-26 (10th Cir. 1981):

> There is no absolute privilege for trade secrets and similar confidential information. To resist discovery under Rule 26(c)(7), a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful. If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure.

(Internal quotations and citations omitted.) Here, AT&T has failed to establish either that the disputed information contains trade secrets or that the disclosure of that information would cause AT&T any substantial harm.

IT IS ORDERED that the Motion is GRANTED. Qwest may disclose the disputed information in filings with the Federal Communications Commission.

Dated June 14, 2006.

> BY THE COURT:
>
> s/ Boyd N. Boland
> United States Magistrate Judge